# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

GEORGE HUGHES,

               Petitioner,         :     Case No. 1:21-cv-246

    - vs -                               District Judge Douglas R. Cole
                                        Magistrate Judge Michael R. Merz

WARDEN, Chillicothe Correctional
  Institution,

                                   :

               Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case was brought *pro se* by Petitioner George Hughes to obtain relief from his conviction in the Butler County Court of Common Pleas on charge of aggravated vehicular manslaughter and operating a motor vehicle under the influence of alcohol (Petition, ECF No. 3, PageID 46). The relevant pleadings are the Petition, the State Court Record (ECF No. 17), the Return of Writ (ECF No. 17), and Petitioner's Reply (ECF No. 18). Upon those pleadings the case is ripe for decision.

On October 13, 2023, the Magistrate Judge reference in this case was recently transferred to the undersigned to help balance the Magistrate Judge workload in this District (ECF No. 21).

**Litigation History**

On May 29, 2017, having been convicted on three or four prior occasions of driving under the influence of alcohol and while his license was under suspension because of a prior conviction, killed Phillip Murray while again driving under the influence (Indictment, State Court Record, ECF No. 16, PageID 330). On March 21, 2018 the Butler County Grand Jury indicted Petitioner on five counts arising out of this death: aggravated vehicular homicide, a first-degree felony in violation of Ohio Revised Code § 2903.06(A)(1); operating a vehicle under the influence ("OVI"), a fourth-degree felony in violation of Ohio Revised Code § 4511.19(A)(1)(a); OVI as measured by alcohol concentration in urine, a fourth-degree felony in violation of Ohio Revised Code § 4511.19(A)(1)(e); driving under an OVI suspension, a first-degree misdemeanor in violation of Ohio Revised Code § 4510.14(A); and operating a motor vehicle without being in control of it, a minor misdemeanor in violation of Ohio Revised Code § 4511.202. *Id.*

Hughes pleaded not guilty and moved to suppress his statements to law enforcement and the results of the urine test to which he had submitted. *Id.*, Exs. 3 and 4. However, on September 26, 2018, at the time set for a hearing on the motions to suppress, Hughes withdrew his motion to suppress and not guilty plea and agreed to plead guilty. Assistant County Prosecutor Marshall recited the following terms of the plea agreement:

> He will further withdraw his previous pleas of not guilty, and will enter pleas of guilty as follows: In Count I to the amended, or lesser included, charge of aggravated vehicular manslaughter, a felony of the second degree; and will plead guilty as charged in Count II, which is operating a vehicle while under the influence with three or four prior convictions, which is a felony to the fourth degree. In exchange, the State will dismiss Counts III, IV, and V.

(Transcript, State Court Record, ECF No. 16, Ex. 50, PageID 610). Defense counsel Adams agreed

2

that this was indeed the plea agreement. *Id.* When reciting the factual basis of the conviction, Attorney Marshall stated that the facts "constitute[s] the offense of aggravated vehicular homicide, a second degree felony in violation of §2903.06(a)(1), and the lesser included offense of the indicted charge of aggravated vehicular homicide felony in the first degree." *Id.* at PageID 614. Hughes admitted that the statement of facts was true. *Id.* at PageID 615.

The written Plea of Guilty was filed the same day at 11:09 a.m., shortly after the oral hearing with the plea colloquy (State Court Record, ECF No. 16, Ex. 5). The controversy in this case surrounds the fact that one of the true charges to which a plea of guilty was being made appears typewritten on this form as "aggravated vehicular manslaughter (OVI)" – Ohio Revised Code § 2903.06(A)(1)(a). However, the word "manslaughter" has been lined through and the word "homicide" printed in. The State admits that the form as typewritten was prepared by the prosecutor who made the change to homicide before filing the form (Return of Writ, ECF No. 17, PageID 633, n. 4).

Hughes was sentenced November 1, 2018; the Judgment of Conviction Entry recites that Hughes had been found guilty of "AGGRAVATED VEHICULAR HOMICIDE as to Count One, a violation of Revised Code Section 2903.06(A)(1)(a) a second degree felony." (State Court Record, ECF No. 16, Ex. 10). Hughes made no complaint at all at the time and in fact did not appeal.

However, on September 23, 2019, Hughes filed a *pro se* Petition for Post-Conviction Relief under Ohio Revised Code § 2953.21 in which he pleaded, along with other claims not relevant here:

> Defendant respectfully requests this Honorable Court must vacate or set aside his judgment of conviction and sentence because the plea agreement was breached when the plea of guilty and jury waiver and judgment of conviction are improperly altered and

3

> modified after the plea of guilty of aggravated vehicular manslaughter (OVI) was accepted and signed by Defendant, attorney for Defendant, prosecuting attorney and this Honorable Court Judge when the Defendant was not present.

(Petition, State Court Record, ECF No. 16, Ex. 11, PageID 357).  The trial court appointed counsel who at the hearing on the Petition clarified that Hughes did not want to withdraw his guilty plea but wanted specific performance of his plea agreement which would amount to an acquittal (Transcript, State Court Record, ECF No. 16, Ex. 40, PageID 595).  He claimed that making the handwritten change without informing him or his lawyer violated his due process right. *Id.*[1] Attorney Marshall denied there had been any due process violation. He noted that everything complained of by Hughes had been on the record and available for direct appeal which Hughes did not take.  *Id.* at PageID 597-98.

The trial judge found that the handwritten amendment to the Guilty Plea was merely the correction of a clerical error and that Hughes was not prejudiced thereby.  She held Hughes' claim did not rise to the level of a constitutional claim which is required for a claim to be cognizable under Ohio Revised Code § 2953.21.

On appeal to the Twelfth District Court of Appeals, Hughes raised the same claim he makes here.  The appellate court found in part:

> At the PCR petition hearing, appellant argued that the misstatement of the offense and the alteration of the plea form constituted a violation of his due process rights and breached his plea agreement. Nonetheless, appellant insisted that he did not want to withdraw his plea; instead, the only relief sought was a dismissal of the charge and release from prison. Appellant did not offer any evidence on how the misidentification rendered his plea less than knowing, intelligent, and voluntary. Also, appellant offered no evidence to establish that he did not understand the nature of the charge or the penalties to which he pied and was convicted. Furthermore,

---

[1] Post-conviction relief under Ohio Revised Code § 2953.21 is available only for constitutional violations.  The judge had expressed at the outset of the hearing confusion on what constitutional right Hughes was claiming had been violated.

> appellant did not claim that he would not have pled guilty if the
> offense had been correctly stated.

*State v. Hughes*, 2020-Ohio-4264, ¶ 8 (Ohio App. 12th Dist. Aug. 31, 2020)(Copy at State Court Record, ECF No. 16, Ex. 20, PageID 438).  The Twelfth District affirmed the trial court's denial of the petition.  It further held Hughes' claim was barred by *res judicata*. *Id.* at ¶ 15.  The Supreme Court of Ohio declined jurisdiction of an appeal. *Id.* at Ex. 28.

About one month later Hughes commenced these proceedings in habeas corpus, pleading one ground for relief, to wit, that the trial court had deprived him of due process by failing to set aside its judgment of conviction which had been entered in violation of the plea agreement (Petition, ECF No. 3, PageID 50).

Respondent moved to dismiss the Petition on the ground that Hughes had not exhausted available state court remedies (ECF No. 7).  Rather than dismiss the case, Magistrate Judge Litkovitz recommended it be stayed pending exhaustion (Report and Recommendation, ECF No. 9).  Neither party objected and District Judge Cole adopted that recommendation (ECF No. 10).

On June 14, 2022, Hughes moved to reinstate this case to the active docket, a motion Judge Cole granted by notation order January 6, 2023.  Thereafter Respondent filed the State Court Record and Return of Writ and Petitioner filed his Reply (ECF No. 18), rendering the case ripe for decision.

# Analysis

## Procedural Default

Respondent asserts that review of the merits of Petitioner's claim is barred by his

procedural default in presenting the claim to the Ohio courts, to wit, his failure to raise this claim on direct appeal (Return, ECF No. 17, PageID 642-49). In his Reply, Hughes argues this is a case of fraud on the court which somehow makes the conviction void. He does not claim that he fairly presented this claim on a direct appeal of right and indeed the record shows there was no such appeal.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default

> doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 582 U.S. 521, 527 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 582 U.S. 521, 527(2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).   A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error.   *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule:  claims which could have been raised on direct appeal must have been raised there or be barred from later consideration by the doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175 (1967).  The Twelfth District Court of Appeals enforced this rule against Hughes.  *State v. Hughes, supra,* at ¶ 15.  Indeed, the Ohio courts have consistently enforced this rule.  *State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16 (1981).

The Sixth Circuit has repeatedly held that the Perry *res judicata* rule is an adequate and independent state ground of action.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

A habeas petitioner can avoid a procedural default bar by showing excusing cause and prejudice or actual innocence.  Hughes has not attempted to do either.  As an indigent criminal defendant, he was entitled to appointed counsel on direct appeal, but never filed an appeal. Certainly he has not shown actual innocence:  he pleaded guilty to driving under the influence and killing another person and has offered no contrary evidence at all.

Instead of offering any purported excuse, Hughes accuses the State of deception in raising the possibility of a delayed direct appeal.  The State did nothing of the sort.  A habeas petitioner must exhaust all available possible state court remedies before coming to federal court.  Because there is no hard and fast time limit on a delayed direct appeal under Ohio law, that possible remedy

was available to Hughes when he filed here. The exhaustion doctrine protects comity between the state and federal courts and the State was completely within its rights to insist that its courts have an opportunity to consider Hughes' claim before this Court did. The undersigned finds nowhere in the record anything like a promise or prediction by the Assistant Attorney General that the Twelfth District would even grant a delayed appeal, much less give Hughes the relief he seeks. A habeas court has the authority to bypass futile state court remedy, but Hughes never suggested this delayed direct appeal would have been futile.

Because Hughes procedurally defaulted his claim by not raising it on direct appeal of right, the Petition should be dismissed with prejudice.

**Merits**

Even if Hughes had not procedurally defaulted his claim, it is without merit and should be dismissed on that basis.

Federal habeas corpus relief is available only for violations of the United Stdates Constitution. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). Hughes' claim that his conviction violates the Ohio Constitution cannot be adjudicated in this Court.

Hughes presented his claim to both the trial court and the Twelfth District Court of Appeals in post-conviction, and each of those courts decided against him on the merits. When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an

objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

So far as this Magistrate Judge's reading has revealed, Hughes has never cited any United States Supreme Court precedent which compels or even suggests the result for which he argues. Indeed, he has done little more than recite what happened and then claim it violates his right to due process of law without citing any supportive case law.

He does correctly argue that plea agreements are analyzed as contracts. Plea agreements are contractual in nature and are therefore interpreted and enforced in accordance with traditional contract law principles. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). Once a plea agreement has been interpreted, the burden of proving a breach lies with the party asserting the breach. *United States v. Harris*, 2006 U.S. App. LEXIS 23456 (6th Cir. 2006), *citing United States v. Smith*, 429 F.3d 410, 420 (6th Cir. 2005).

Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000); *State v. Bethel*, 110 Ohio St. 3d 416 (2006). In the construction of plea agreements, as with all contracts, courts should give effect if possible to every provision. *United States v. Rourke*, 74 F.3d 802, 807 (7th Cir. 1996); *United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998). The Sixth Circuit interprets plea agreements according to traditional contract law principles and construes ambiguities against the government. *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). A court must give effect to the intent of the parties as expressed by the plain language of the plea agreement. *United States v. Beals*, 698 F. 3d 248, 256 (6th Cir. 2012).

The evident intent of the parties was that Hughes would give up his right to a hearing on his motion to suppress and his right to a trial. He would plead guilty to the first count in the Indictment, reduced from a first degree to a second degree felony, and to one count of operating a motor vehicle under the influence; the State would then dismiss all the other charges. That happened. The court accepted the plea agreement and Hughes's guilty plea and sentenced him for second degree vehicular homicide and OVI. The homicide sentence was less than the maximum and the judge allowed the homicide and OVI sentences to be served concurrently when maximum consecutive sentences would certainly have been justified, given Hughes's recidivism.

Hughes says his agreement was to plead to aggravated vehicular manslaughter, not homicide. But such a plea agreement would have been completely illusory because there is no such offense in Ohio law as aggravated vehicular manslaughter.

Supposing, however, that the Court accepted Hughes's argument that the State has breached the plea agreement. One possible remedy would be rescission, to set the plea agreement aside, which would put Hughes back where he was before, facing a charge of aggravated vehicular homicide in the first degree and four other counts. Hughes has repeatedly said he does not want to withdraw his guilty plea and that is completely understandable since he has already received the benefit of his bargain. He has never suggested any harm he has suffered as a result of the prosecutor's correcting his mistake. Even if the correction had been a constitutional violation, it is clearly harmless and habeas courts do not sit to correct harmless error. *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The Ohio courts' decision on Hughes' claim is neither contrary to nor an objectively unreasonable application of any holding of the United States Supreme Court. The case should therefore be dismissed on the merits as well as on Hughes' procedural default.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability.

The Court should also certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*. The fact that Hughes has continued to pursue an utterly meritless claim through so many stages of the judicial process, often with appointed counsel, suggests he has not yet accepted what his record clearly suggests, to wit, that he is an untreated and unreformed alcoholic who caused the death of a man whom he described as his best friend. The letters submitted to the Common Pleas Court prior to sentencing request leniency and describe many supportive things Petitioner has done for his family, but none of them suggest he has done anything to treat his alcoholism. Unless he accepts responsibility and begins the hard work of treatment, he will remain a serious threat to the community upon his release.

October 16, 2023

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's

objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge