UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**GEORGE HUGHES,**

      **Petitioner,**

  v.

**WARDEN, CHILLICOTHE CORRECTIONAL INSTITUTION,**

      **Respondent.**

Case No. 1:21-cv-246

**JUDGE DOUGLAS R. COLE**
Magistrate Judge Merz

## OPINION AND ORDER

Before the Court is Magistrate Judge Merz's Report and Recommendation (R&R, Doc. 22) recommending that the Court dismiss George Hughes's petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 3) with prejudice. Because the Court agrees that the sole ground for relief Hughes raises in his petition is procedurally defaulted, the Court **ADOPTS** the R&R (Doc. 22), **OVERRULES** Hughes's objections (Doc. 23), and **DENIES** Hughes's Petition (Doc. 3). In addition, since the time that the Magistrate Judge issued the R&R, Hughes moved for the Court to take judicial notice of various "facts" relating to the claims in his petition. (Doc. 24). The Magistrate Judge denied this non-dispositive motion, (Doc. 25), and Hughes objects to that, as well, (Doc. 26). Finding no clear error in the Magistrate Judge's decision on that motion, *see* Fed. R. Civ. P. 72(a), the Court **DENIES** that motion, too.

# BACKGROUND[1]

In March 2018, a State of Ohio grand jury indicted Hughes for five offenses related to a fatal car crash he caused. *State v. Hughes*, 2020-Ohio-4264, ¶ 2 (12th Dist.). The State charged him with: (1) aggravated vehicular homicide, a first-degree felony; (2) operating a vehicle under the influence (OVI), a fourth-degree felony; (3) OVI while under the influence of alcohol (shown by urine test), a fourth-degree felony; (4) driving under an OVI suspension, a first-degree misdemeanor; and (5) operating a motor vehicle without being in control of it, a minor misdemeanor. *Id.* Hughes eventually agreed to plead guilty to the aggravated vehicular homicide count and one OVI count in exchange for the state's agreeing to dismiss the remaining counts and amending the aggravated vehicular homicide count from a first-degree felony to the lesser included second-degree felony charge. *Id.* ¶ 3.

During the change-of-plea hearing, both the prosecutor and the trial court mistakenly described the count to which Hughes agreed to plead guilty as

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), the Court presumes that the Ohio court's determination of the facts is correct and therefore cites the Ohio Court of Appeals for the relevant factual background here. *Cf. Shinn v. Ramirez*, 596 U.S. 366, 372–73 (2022) (citing the corresponding Arizona Supreme Court opinion for the case's factual background).

That said, Hughes has also moved the Court to take judicial notice of certain other "facts"—including that the Ohio Court of Appeals denied Hughes "substantive and procedural due process" and that the Magistrate Judge denied Hughes the "opportunity to be heard," (Doc. 24, #697–98)—as supplying a reliable factual background. The Magistrate Judge denied that motion for failure "to reference any source whose accuracy could not reasonably be questioned or indeed any source at all," except as to certain facts (such as dates) that are also evident from the face of the state court record. (Doc. 25, #707). Hughes objected, but his objections seem directed more at the underlying question of whether the State of Ohio violated his constitutional rights than to the Magistrate Judge's ruling on his motion. (Doc. 26). In any event, the Magistrate Judge did not clearly err in requiring Hughes to identify appropriate sources for any "facts" subject to judicial notice, or in concluding that Hughes had failed to do so. Accordingly, the Court **OVERRULES** Hughes's Objections (Doc. 26) to the Magistrate Judge's Decision and Order (Doc. 25) denying his motion to take judicial notice, (Doc. 24).

"aggravated vehicular manslaughter." *Id.* ¶¶ 3–4. No such offense exists in the Ohio Revised Code. *Id.* ¶ 3 n.1. Ohio law instead creates three related offenses: aggravated vehicular homicide, vehicular homicide, and vehicular manslaughter. *Id.* Vehicular manslaughter, the least serious of the three, is a second-degree misdemeanor. Ohio Rev. Code § 2903.06(D). Beyond the court's and the prosecutor's use of the faulty label, the written plea agreement also included that same erroneous term—"aggravated vehicular manslaughter." (*See* Doc. 16, #346). Specifically, the agreement stated that Hughes agreed to plead guilty to "aggravated vehicular manslaughter," but it described that crime as an "F2" (second-degree felony) under Ohio Revised Code § 2903.06(A)(1)(a). (Doc. 16, #346). Ohio Revised Code § 2903.06(A) is the statutory section that establishes the felony offense of aggravated vehicular *homicide*, which can be a felony of the first, second, or third degree, depending on the circumstances. *Id.* § 2903.06(B)

To make matters more confusing, while the prosecutor sometimes referred to the offense at Hughes's plea hearing as aggravated vehicular manslaughter, at other times he used the correct term for the offense—aggravated vehicular homicide. For example, when reciting the facts underlying the charges against Holmes, the prosecutor stated,

> [t]he State was prepared to prove beyond a reasonable doubt, first in Count I, that on or about May 29th, 2017, … George Earl Hughes did, while operating a motor vehicle, … cause the death of another, … as [a] []proximate result of committing a violation of Division A of § 4511.19 of the Revised Code[,] … all of which constitutes the offense of aggravated

3

> vehicular *homicide*, a second degree felony in violation of § 2903.06(A)(1).

(Doc. 16, #614 (emphasis added)). The trial court then asked Hughes if he heard the statement of facts and agreed that the facts were true. (*Id.* at #615). Hughes answered in the affirmative. (*Id.*). The trial court next advised Hughes of the mandatory penalties for a second-degree felony and asked if he understood the penalties he potentially faced by pleading guilty. (*Id.* at #616). Hughes responded that he understood. (*Id.*). At the end of the hearing, Hughes confirmed his intention to plead guilty. (*Id.* at #619).

After the hearing, the prosecutor realized the error in the written plea agreement. *Hughes*, 2020-Ohio-4264, ¶ 5. Instead of raising the issue with the trial court, the prosecutor crossed out the word "manslaughter" in the plea agreement and handwrote "homicide" over it. *Id.*; (Doc. 16, #346). The prosecutor submitted the altered plea agreement to the clerk of courts for filing and did not notify the court or defense counsel of the change. *Hughes*, 2020-Ohio-4264, ¶ 5.

At sentencing, the trial court did not refer to the offenses by name but only by their count number in the indictment. *Id.* ¶ 6. The trial court sentenced Hughes to seven years on Count I (the aggravated vehicular homicide count) and 18 months on Count II (the OVI count), with the sentences to run concurrently. *Id.* The judgment of conviction specified that Hughes was sentenced to seven years for "Aggravated Vehicular Homicide as to Count One, a violation of Revised Code Section 2903.63(A)(1)(a) a second[-]degree felony." (Doc. 16, #355). Hughes did not take a direct appeal of his sentence or conviction. *Hughes*, 2020-Ohio-4264, ¶ 6.

4

Ten months later, Hughes filed a pro se postconviction petition under Ohio Revised Code § 2953.21. *Id.* ¶ 7. He raised three claims: that (1) his plea agreement was breached because the prosecution altered the count to which Hughes pleaded guilty from "aggravated vehicular manslaughter" to "aggravated vehicular homicide"; (2) his two counts of conviction should have been merged; and (3) his counsel was ineffective for failing to "secure the plea agreement for Aggravated Vehicular Manslaughter." (Doc. 16, #359–68). The trial court denied the petition in full. (*Id.* at #381).

Hughes appealed, but only as to his first breach-of-plea-agreement claim. *Hughes*, 2020-Ohio-4264, ¶¶ 9–11. The Ohio Court of Appeals held that Hughes's claim lacked merit because he failed to show that his plea was unknowing or involuntary. *Id.* ¶ 14. It held that because the trial court advised him of the penalties of a second-degree felony and sentenced him, Hughes "received exactly the benefit of the plea he had negotiated." *Id.*

Alternatively, the Ohio Court of Appeals held that his claim was barred by the doctrine of res judicata. *Id.* ¶ 15. It stated that Ohio law bars a petitioner from raising claims in a postconviction petition when such claims were raised, or could have been raised, on direct appeal. *Id.* And because Hughes could have raised his breach-of-plea-agreement claim on direct appeal—but failed to do so by not taking an appeal from the judgment of conviction—the Ohio Court of Appeals held that his claim was barred. *Id.*

5

Hughes then filed his habeas petition in this Court raising the same single ground for relief: his plea agreement was breached when the prosecutor altered it. (Doc. 3, #50). Because Hughes had not, at the time he initiated this federal habeas action, filed an application to file a delayed appeal in his Ohio criminal case, Magistrate Judge Litkovitz, the then-assigned magistrate judge, recommended staying this action to allow Hughes to exhaust his state court remedies. (Doc. 9). This Court adopted that recommendation and stayed the case to allow Hughes to file an application for a delayed appeal. (Doc. 10). Hughes eventually did so, (Doc. 16, #508–11), and the Ohio Court of Appeals denied his application because Hughes had not shown good cause for seeking the delayed appeal, (*id.* at #546–49).

A few months after that denial, Hughes moved to reinstate this stayed habeas action. (Doc. 11). This Court lifted the stay. (1/6/23 Not. Order). The State of Ohio then filed a Return of Writ (Doc. 17). There, it argued that Hughes's claim was both meritless and procedurally defaulted. (*Id.* at #647–49, 653–56). Hughes replied. (Doc. 18). Magistrate Judge Merz then issued an R&R recommending this Court dismiss Hughes's petition with prejudice on procedural default grounds. (Doc. 22). Holmes objected. (Doc. 23). The petition is ripe for review.

## LEGAL STANDARD

When a party properly objects to a Magistrate Judge's R&R, the Court reviews the R&R de novo. *Williams v. Parikh*, ___ F. Supp. 3d ___, 2023 WL 8824845, at *2 (S.D. Ohio 2023). But this action is not merely a federal suit first considered by a magistrate judge. Rather, Hughes seeks a writ of habeas corpus, which requires the

6

Court to conduct a collateral review of a state court judgment and the underlying state court decisions supporting that judgment. That review is highly constrained by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Indeed, AEDPA affects the Court's review in several ways.

As relevant here, AEDPA serves as a gatekeeper by requiring a petitioner to exhaust his substantive claims in the courts of the state in which he was convicted. 28 U.S.C. § 2254(b)(1). Beyond AEDPA's textual exhaustion requirement, the Supreme Court has found that the comity principles supporting the exhaustion rule—allowing a state court to address the merits of a constitutional claim "in the first instance"—also requires a federal court to dismiss claims that are technically exhausted (in the sense that there is no further available avenue for state court review), but that a state court either rejected because the petitioner failed to follow a state procedural rule or did not adjudicate (and would not adjudicate now on procedural grounds) because the petitioner never raised it. *Davila v. Davis*, 582 U.S. 521, 527–28 (2017) (citation omitted). A petitioner is said to have "procedurally defaulted" such claims. *See Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991). A petitioner procedurally defaults a claim in the former sense when (1) the petitioner failed to follow a procedural rule when raising his claim before the state court; (2) the state court enforced the rule to bar the claim; (3) the rule is an "adequate and independent" ground to deny federal review of the claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *Williams v. Burt*, 949 F.3d 966, 972–73 (6th Cir. 2020). As to the second prong, the word "enforce" asks whether the state

7

court *actually relied* on the procedural rule to deny review. But on that front, it is enough that the state court "explicitly invoke[d]" the procedural rule as *a* basis for its decision, even if the state court also chose to deny the claim in the alternative on the merits. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

## LAW AND ANALYSIS

Magistrate Judge Merz concluded that Hughes's ground for relief is procedurally defaulted because he failed to raise it in a timely direct appeal of his criminal conviction, and the postconviction court expressly relied on that failure as a procedural basis to deny review. (Doc. 22, #680–84). The Court agrees.

First, Hughes failed to follow an applicable procedural rule. Ohio law bars a petitioner from raising claims in a postconviction petition that were raised or could have been raised on direct appeal. *State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967); *State v. Carver*, 194 N.E.3d 393, 399 (Ohio Ct. App. 2022). Any claims predicated on facts that are "evident on the face of the record" must be raised on direct appeal. *State v. Wharton*, 48 N.E.3d 123, 127 (Ohio Ct. App. 2015). Hughes's breach-of-plea-agreement claim relied on facts which were "evident on the face of the record." The transcript of the change-of-plea hearing revealed that both the prosecutor and the trial court mislabeled Count I of the indictment as "aggravated vehicular manslaughter." And the filed plea agreement contained the handwritten alteration. (Doc. 16, #346). So Holmes could have raised his claim on direct appeal. But he did not timely file a direct appeal. And his application to file a delayed appeal was denied because the Ohio Court of Appeals found he had no cause for his delay. (Doc. 16,

8

#546–49). In the absence of a direct appeal (timely or delayed), Hughes's raising his breach-of-plea-agreement claim by way of a postconviction petition violated Ohio's procedural rule.

Second, the Ohio Court of Appeals enforced the state procedural rule. The court in the postconviction action "explicitly invoked" the doctrine of res judicata as a basis for its decision. *See Hughes*, 2020-Ohio-4246, ¶ 15 ("We further find that this assignment of error should be overruled on the basis of res judicata."). Although the state court also addressed the merits of Hughes's claim, that does not preclude a finding of procedural default, given it relied on the procedural rule as a separate basis for its decision. *Harris*, 489 U.S. at 264 n.10.

Third, the doctrine of res judicata is an adequate and independent state procedural ground precluding federal review. The Sixth Circuit has repeatedly held that Ohio's res judicata rule meets this factor. *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 830 (6th Cir. 2019).

Fourth, Hughes has failed to show any cause for the default. He only briefly addresses the issue in his reply and objections. Hughes argues that his default should be excused because (1) the State of Ohio previously argued Hughes should seek a delayed appeal because his claim was initially unexhausted, (Doc. 18, #663–64); (2) he is not an attorney, (Doc. 23, #693); and (3) the then-assigned Magistrate Judge did not mention procedural default when she undertook her initial screening of his habeas petition and ordered the State to file a Return of Writ, (*id.*). Hughes's first reason is not so much an excuse for his procedural default as an argument that the

9

state impliedly waived the defense. But a state does not waive a procedural default defense by arguing that a claim is unexhausted and should be further raised in state court. A state waives its procedural default defense only when its response to the petitioner's claim is "inconsistent with an intent to preserve that defense." *Perruquet v. Briley*, 390 F.3d 505, 516 (7th Cir. 2004). But asserting that a petitioner's claim is unexhausted is not inconsistent with a later argument that the claim (after exhaustion) is procedurally defaulted. Indeed, procedural default is a "corollary" to the exhaustion requirement; it logically flows from the exhaustion requirement and is not inconsistent with it. *Davila*, 582 U.S. at 527. As to Hughes's latter two reasons, neither is an adequate showing of cause for default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (pro se status); *cf. Knowlin v. Pollard*, No. 19-cv-261, 2019 WL 4565553, at *4 (E.D. Wis. Sept. 20, 2019) (declining to address procedural default at habeas screening stage because it is an affirmative defense that must be raised by the State).

Because all four prongs of the procedural default test are met, Hughes's claim is procedurally defaulted. That finding bars this Court from granting habeas relief.

## CONCLUSION

Because Hughes's single ground for relief is procedurally defaulted, the Court **ADOPTS** the R&R (Doc. 22) and **OVERRULES** Hughes's objections to it, (Doc. 23). The Court also **OVERRULES** Hughes's Objections (Doc. 26) to the Magistrate Judge's denial, (Doc. 25), of his motion for the Court to take judicial notice of

purported "facts," (Doc. 24). Accordingly, the Court **DENIES** the Petition (Doc. 3) **WITH PREJUDICE**.

Under Rule 11(a) of the Rules Governing 2254 Cases in the United States District Courts, the Court also "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court **DENIES** Hughes a certificate of appealability under 28 U.S.C. § 2253(c) because reasonable jurists could not disagree with the Court's adjudication of Hughes's habeas claim. *Kuck v. Robinson*, No. 19-3226, 2019 WL 2564578, at *1 (6th Cir. June 10, 2019).

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

August 8, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**